**C & S MANUFACTURING CORPORATION,**
**Plaintiff,**

v.

**UNITED STATES FIRE INSURANCE COMPANY, Defendant.**

No. 89–C–0870.

United States District Court,
E.D. Wisconsin.

March 3, 1992.

Wesley G. Kennedy and Robert H. Nichols Cotton, Watt, Jones & King, Chicago, IL, for plaintiff.

John J. O'Neill, O'Neill, Schimmel, Quirk & Carroll, Milwaukee, WI, for defendant.

### ORDER

WARREN, Senior District Judge.

On July 21, 1989, plaintiff filed this diversity action for breach of insurance contract, bad faith and declaratory judgment. This

action arises out of an incident in which an aircraft owned by plaintiff and insured by defendant suffered substantial damages. The First Amended Complaint contains five counts. Counts I, II, IV and V have been resolved by the parties and were dismissed, with prejudice, pursuant to a *Stipulation and Order* entered on March 21, 1990. Count III concerns certain costs of repair arising out of the incident which were absorbed by a third party, the manufacturer of the aircraft. Now before the Court is plaintiff's Motion for Summary Judgment with Respect to Count III.

## I. *FACTS*

The facts in this case are undisputed. In or about December 1986, plaintiff purchased a model A36 Beachcraft Bonanza aircraft (the "aircraft"), manufactured by Beech Aircraft Corporation ("Beech"), from Stevens Aviation, Inc. ("Stevens"), an aircraft dealer located in Knoxville, Tennessee.

In connection with its purchase of the aircraft, plaintiff purchased an insurance policy from defendant. Part Two, Section 3(b) of the policy provides in part:

If your aircraft is damaged, we will pay the reasonable cost of repair after the aircraft is repaired, but we will not pay more than the agreed value less the applicable deductible.

.　　.　　.　　.　　.

Cost of repairs includes necessary labor at straight time rates, parts and materials of similar kind and quality and the least expensive transportation charges necessary to the repair of your aircraft and its return to the place where the damage occurred or the home airport whichever is nearer.

On or about June 8, 1988, at a time when plaintiff's president, a pilot duly licensed to operate the aircraft, was flying the aircraft over the State of Washington, an incident occurred which caused substantial damage to the aircraft. The incident resulted in extensive damage to, *inter alia*, the aircraft's wings, including substantial rippling and buckling of the wings' skins, and structural damage to the wing assemblies. The damage necessitated substantial repairs to, or complete replacement of, the aircraft's wings.

Following the June 8, 1988 incident, the aircraft was ferried to Flightcraft, Inc. ("Flightcraft"), an aircraft maintenance and repair facility located in Seattle, Washington, for repairs. After Flightcraft had commenced work on necessary repairs to the aircraft's wings, consultations took place between Beech and Flightcraft concerning the best approach to rectify the damage to the wings. During the course of inspections, representatives of Beech ascertained that the damaged wings of the aircraft were attached in a manner which did not meet Beech's manufacturing standards. This condition was not caused by the June 8, 1988 incident. Although the aircraft was no longer under warranty, because of this condition, Beech offered to replace the wing-box assemblies at Beech's expense. Plaintiff accepted Beech's offer.

Beech thereafter provided and installed, at its cost, new wings on the aircraft. According to Flightcraft's invoice for that work, the cost of those repairs was $40,854.00. On or about February 28, 1989, Mr. Lee Coffman, Flightcraft's service manager, told plaintiff's president that the amount reflected on the invoice represented the most accurate estimate of the cost which would have been incurred by plaintiff in repairing or replacing the wing-box assemblies had Beech not replaced them. Mr. Coffman stated that, in fact, the cost of repair or replacement might have been higher.

## II. *STANDARD OF REVIEW*

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Further, "[i]n reviewing a summary judgment, [a court] must view the record and inferences drawn from it in the light most favorable to the nonmoving party." *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 937 (7th Cir.1989). However, a scintilla of evidence is not enough to defeat a motion for summary judgment: The nonmovant must go beyond the pleadings by affirmative-

ly demonstrating the existence of a genuine issue of material fact. *Id.* at 938.

### III. *DISCUSSION*

■ As referred to above, the operative policy language is as follows: "If your aircraft is damaged, we will pay the reasonable cost of repair after the aircraft is repaired, but we will not pay more than the agreed value less the applicable deductible." Accordingly, the policy requires defendant to pay plaintiff's cost of repairs so long as they are reasonable and not more than the agreed value less the applicable deductible.

■ This Court finds that this coverage provision contains an ambiguity since it does not state whether plaintiff must actually incur the cost of repair in order to recover under the policy. *See Kopp v. Home Mutual Insurance Co.,* 6 Wis.2d 53, 57, 94 N.W.2d 224 (1959). "It is the generally accepted rule of construction that ambiguities in a contract of insurance are to be resolved against the insurer who drafted the same and in favor of the insured." *Id.* (citing *Northland Bottling Co. v. Farmers Mutual Automobile Insurance Co.,* 3 Wis.2d 326, 329, 88 N.W.2d 363 (1958)); *see also* 43 Am.Jur.2d *Insurance* § 283, 357–359 (1982). However, policies of insurance are also to be given a reasonable construction, not one that leads to an absurd result. 13 Appleman, *Insurance Law and Practice,* § 7386, p. 38.

■ In *Kopp,* the Supreme Court of Wisconsin held that "the unreasonable result should be avoided of so construing [a] policy as to permit the [insured] to recover for ... services supplied to him by some third-party volunteer without cost or personal liability to pay therefor on the part of such [insured]." *Kopp,* 6 Wis.2d at 57–58, 94 N.W.2d 224. In this case, Beech, a third-party volunteer, repaired plaintiff's aircraft without cost or personal liability to plaintiff. Accordingly, in order to avoid an unreasonable result, this Court must construe the policy language so as not to provide coverage.[1]

Because this case does not involve any issues of disputed fact, and may be decided as a matter of law, this Court has the authority to enter judgment in favor of defendant. *See* 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2720, pp. 28–35. Accordingly, this Court will grant defendant summary judgment on Count III even though it did not file a cross motion for summary judgment.

### IV. *SUMMARY*

Under the foregoing reasoning, this Court **DENIES** plaintiff's motion for summary judgment and **GRANTS** defendant summary judgment on Count III. Accordingly, this case is **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

---

1. This interpretation of the policy language wards off a possible "moral hazard." If plaintiffs could recover for repairs which they were not required to pay, there would exist an improper incentive for them to risk damaging the aircraft in order to receive a double recovery. This concern is not great in cases such as ours where a plaintiff appears to receive a fortuitous payment by a third party. However, the concern is real, for example, where a plaintiff knows he will receive payment from the manufacturer because the product is still under warranty.